UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JOANN PIAZZA**,

      Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No: 8:21-cv-835-WFJ-CPT

**TARGET CORPORATION**,

      Defendant.
_____/

## ORDER

Before the Court is Defendant Target Corporation's Amended Motion for Summary Judgment (Dkt. 28). Plaintiff Joann Piazza has filed a response in opposition (Dkt. 33) and Target has replied (Dkt. 36). With the benefit of full briefing and able argument by both sides, the Court grants Target's Amended Motion for Summary Judgment.

### FACTUAL BACKGROUND

On March 16, 2019, Ms. Piazza went to the Target store at 6150 14th Street West, Bradenton, Florida ("the Store") to purchase detergent. Dkt. 28-3 at 30. It had rained earlier in the day and, after Ms. Piazza exited her vehicle, she noticed that the ground was wet. *Id.* at 34. Undeterred, Ms. Piazza began walking towards the Store's only entrance.

**Exhibit 16**

Photographs of the Store and its entry walkway[1] can be seen here:





As Ms. Piazza entered the walkway in front of the Store, she "felt like [she] hit a piece of ice." *Id.* at 32. Her right leg slid out in front of her, and she "went down screaming." *Id.* Bystanders found Ms. Piazza before Target employees came

---

[1] These photographs are provided by Ms. Piazza's expert, Michael F. Bosworth. Dkt. 28-7 at 4.

**Exhibit 16**

out of the Store to assist and call 911. *Id.* at 46.

While Ms. Piazza is allegedly certain that she slipped on the yellow lines of the Store's entry walkway, she was unclear at her deposition concerning the exact cause of her fall. At one point, Ms. Piazza opined that, "probably," there was "a little bit of slick grease . . . whatever was on the ground that [day], I don't know . . . I know I hit a patch that made me slide." Dkt. 28-3 at 36. At another point, she claimed that "[t]he painted stripes had no adhesive properties and were slippery." *Id.* at 40.

Shortly thereafter, emergency medical services arrived. They transported Ms. Piazza to Blake Memorial Hospital where she was discharged the same day with instructions to see a specialist. *Id.* at 50–51. Ms. Piazza ultimately received surgery and physical therapy for a torn quadricep tendon. *Id.* at 53.

## PROCEDURAL BACKGROUND

On March 9, 2021, Ms. Piazza filed a two-count complaint against Target and an unknown store manager in the Circuit Court of the Tenth Judicial Circuit in and for Manatee County, Florida. Dkt. 1-1. On April 7, 2021, Target removed the case to the United States District Court for the Middle District of Florida. Dkt. 1. The Court subsequently denied Ms. Piazza's Motion to Remand and granted Target's Motion to Dismiss Count II of Ms. Piazza's Amended Complaint. Dkt. 17; Dkt. 18.

Ms. Piazza's sole remaining count (Count I) alleges that Target breached its

**Exhibit 16**

duty to exercise reasonable care for her safety by committing one or more of the following omissions or commissions: a) negligently failing to maintain or adequately maintain the Store parking lot; b) negligently failing to inspect or adequately inspect the Store parking lot; c) negligently failing to warn or adequately warn Ms. Piazza of the dangerous condition when Target knew or should have known of the dangerous condition and Ms. Piazza was unaware of the dangerous condition; and, d) negligently failing to correct or adequately correct the dangerous condition when the dangerous condition was known to Target or had existed for a sufficient length of time so that Target should have known of the dangerous condition. Dkt. 1-1 at 2–3.

With discovery now concluded, Target moves for summary judgment. Dkt. 28.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact

**Exhibit 16**

is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party instead must go beyond the pleadings and "identify affirmative evidence" that creates a genuine factual dispute. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). In addition, the Court must resolve any reasonable doubts in the non-moving party's favor. *Id.* Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

**Exhibit 16**

## DISCUSSION

Following her deposition, Ms. Piazza's negligence theory has focused on "[t]he application of the yellow sealer onto the [Store's] parking lot." Dkt. 33 at 9. By this, she means the yellow crosswalk striping which appears slightly worn in the photograph[2] provided below:



Ms. Piazza's expert, Michael F. Bosworth, claims that the "sealer" "created an approximately impermeable surface membrane that partially filled the asphalt surface recesses and smoothed the fixture relief edges[,]" thereby diminishing surface traction. *Id.* Mr. Bosworth further claims that there was no aggregate or abrasive in the yellow crosswalk striping to mitigate the diminished surface traction per Section 5.1.3 of ASTM F1637-13, "Standard Practice for Safe Walking

---

[2] This photograph is provided by Target's expert, Robin J. Davies. Dkt. 28-8 at 6.

**Exhibit 16**

Surfaces."[3] Dkt. 28-7 at 6–7. Thus, Ms. Piazza argues, the yellow striping on the Store's entry crosswalk created an inherently dangerous (i.e., unreasonably slippery) condition that was not readily perceivable.

It is important to note that, while Ms. Piazza and Mr. Bosworth refer to the yellow substance striped over the asphalt in the above photograph as "sealer," Mr. Bosworth never tested the yellow striping beyond taking photographs of it. *See* Dkt. 28-7; Dkt. 28-6. It is therefore unclear whether the yellow striping was merely yellow paint or something more. Similarly, there is no evidence indicating what kind of paint was used.

Target's expert, Robin J. Davies, nevertheless concludes that "the application of the yellow striping served to actually increase the slip resistance of the asphalt surface." Dkt. 28-8 at 9. Ms. Davies also claims that, based on Mr. Bosworth's

---

[3] On February 15, 2019, approximately one month before Ms. Piazza's accident, ASTM F1637-13 was updated to its current edition, ASTM F1637-19, "Standard Practice for Safe Walking Surfaces." Like Section 5.1.3 of ASTM F1637-13, Section 5.1.3 of ASTM F1637-19 provides that "[w]alkways shall be slip resistant under expected environmental conditions and use. Painted walkways shall contain an abrasive additive, cross cut grooving, texturing or other appropriate means to render the surface slip resistant where wet conditions may be reasonably foreseeable." The terms of ASTM F1637 are defined by ASTM F1646-16, "Standard Terminology Relating to Walkway Safety and Footwear." Thereunder, "slip resistant" means "the provision of adequate slip resistance to reduce the likelihood of slip for pedestrians using reasonable care on the walking surface under expected use conditions." "Abrasive additive," "cross cut grooving," "texturing," and "other appropriate means" are not defined or expanded upon. Nor is it clear that the Target crosswalk (over 80% unpainted by sight) is a "painted walkway" under this standard.

Mr. Bosworth describes ASTM F1637-13 as a prescriptive construction standard that is "required to make a safe [painted walking] surface[,]" but admits that ASTM F1637-13 is not a regulatory standard under the Florida Building Code. Dkt. 28-6 at 37–39. Target's expert, Robin J. Davies, claims that "ASTM F1637 is not a part of the applicable building codes or standards, nor is it referenced or incorporated through reference by the applicable codes and standards. Rather, this document is a nonmandatory advisory guideline." Dkt. 28-8 at 8.

Exhibit 16

methodology, it is impossible for him to conclusively determine that there was no additive in the striping. *Id.* at 8. Either way, Target maintains that Ms. Piazza cannot establish the required elements of her negligence claim.

## I. Applicable Law

"Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 90 (1938)). Therefore, because Ms. Piazza's accident occurred in Florida, Florida law applies.

Under Florida law, a plaintiff seeking to sustain a cause of action for negligence bears the burden of proving four basic elements: "(1) duty, (2) breach of duty, (3) injury arising from the breach, and (4) damages caused by the injury as a result of the breach of duty." *Vallot v. Logan's Roadhouse, Inc.*, 567 F. App'x 723, 726 (11th Cir. 2014). It is well established that business owners in Florida owe two separate and distinct duties to business invitees: "(1) to warn of concealed dangers which are or should be known to the owner and which are unknown to the invitee and cannot be discovered through the exercise of due care; and (2) to use ordinary care to maintain its premises in a reasonably safe condition." *Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1131 (Fla. 1st DCA 2017) (citations omitted). Still, "there is no duty to warn against an open and obvious condition which is not inherently dangerous." *Id.* And a "proprietor has a right to assume that the invitee

**Exhibit 16**

will perceive that which would be obvious to him upon the ordinary use of his own senses." *Earley v. Morrison Cafeteria Co. of Orlando*, 61 So. 2d 477, 478 (Fla. 1952) (citations omitted).

II. **Analysis**

In the instant case, Target does not dispute that it owed Ms. Piazza the aforementioned duties of care as a business invitee, that Ms. Piazza was injured, or that Ms. Piazza incurred damages. Rather, Target argues that it did not breach its duties to Ms. Piazza because (1) Target lacked actual or constructive knowledge of the alleged dangerous condition, and (2) the condition was open, obvious, and not inherently dangerous. Dkt. 28 at 8, 12. The Court will consider each point in turn.

Concerning Target's first argument, Ms. Piazza responds that the actual or constructive knowledge requirement stems entirely from Section 768.0755, Florida Statutes, and that Section 768.0755 has no applicability because Ms. Piazza fell outside of the Target store on a non-transitory substance.[4] Dkt. 33 at 14. The Court disagrees.

Courts have held, both before and after the enactment of Section 768.0755, that "[e]ven if a condition qualifies as perilous or dangerous . . . [p]laintiffs still must show 'actual or constructive notice that . . . defendant[s] knew or should have known of it.'" *Cabrera v. Macy's Fla. Stores, LLC*, No. 20-24173-CIV, 2022 WL

---

[4] This, of course, ignores Ms. Piazza's testimony concerning the possible existence of car grease underfoot. Dkt. 28-3 at 36.

**Exhibit 16**

1642762, at *3 (S.D. Fla. Mar. 31, 2022) (citations omitted); *see also Lester's Diner II, Inc. v. Gilliam*, 788 So. 2d 283, 285 (Fla. 4th DCA 2000) (stating that "in a slip and fall action, the plaintiff must generally prove that the owner of the premises had actual or constructive knowledge of the causative condition"). Additionally, courts have applied this notice requirement where plaintiffs fell outside of stores as well as where plaintiffs fell due to causes that may not colloquially be considered "non-transitory substances." *See Speedway, LLC v. Cevallos*, 331 So. 3d 731, 735 (Fla. 4th DCA 2021) (applying the actual or constructive knowledge requirement of Section 768.0755 to slippery gas and oil coated concrete outside of a gas station); *Kertz v. United States*, No. 2:12-CV-22-FTM-29SPC, 2013 WL 12119566, at *2–3 (M.D. Fla. Apr. 15, 2013) (applying the actual or constructive knowledge requirement of Section 768.0755 to a piece of rebar exposed from a concrete parking block in a post office parking lot); *see also Cabrera*, 2022 WL 1642762, at *3 (finding that "to survive a motion for summary judgment on their negligence claims, Plaintiffs must provide competent evidence that not only did the downward escalator . . . constitute a perilous or dangerous condition on [the subject date], but that Defendants had actual or constructive knowledge of such a dangerous condition").

Accordingly, to survive summary judgment, Ms. Piazza must identify affirmative evidence that creates a genuine factual dispute concerning whether

**Exhibit 16**

Target had actual or constructive knowledge of the alleged dangerous condition upon, or caused by, its yellow striped entry walkway.[5] Ms. Piazza does not attempt to establish actual knowledge. She therefore must rely on constructive knowledge.

Section 768.0755 provides that "[c]onstructive knowledge may be proven by circumstantial evidence showing that: (a) [t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or (b) [t]he condition occurred with regularity and was therefore foreseeable." Ms. Piazza makes no effort to discuss or deal with the issue of car grease that she testified she may have slipped on. There is also no indication in the record that Target was aware or should have been aware of any grease issue. Consequently, constructive knowledge cannot be established on this theory.

Concerning Ms. Piazza's assertion of the yellow striping itself being unreasonably slippery, the record is equally devoid regarding the length of time for which this allegedly dangerous condition existed due to rain. Mr. Bosworth performed no porosity testing and developed no opinions on this matter. Dkt. 28-6 at 47. Thus, at a minimum, Ms. Piazza cannot establish temporal-based constructive knowledge on this theory either.

---

[5] *See Leaton v. Flik Int'l Corp.*, No. 2:19-CV-425-JLB-MRM, 2021 WL 3550370, at *7 (M.D. Fla. Aug. 11, 2021) (finding that where Section 768.0755 controls a defendant's liability, the negligent mode of operation theory of liability is eliminated, and a plaintiff cannot maintain a cause of action thereupon).

**Exhibit 16**

Regularity-based constructive knowledge is a closer question. Even so, the only evidence in the record that supports regularity is the expert report and deposition testimony of Mr. Bosworth. As mentioned above, Mr. Bosworth contends that the yellow striping in the Store's entry walkway creates an impermeable surface that lowers surface traction and becomes especially slick with moisture. When juxtaposed with the well-known fact that it often rains in Florida, Mr. Bosworth's contention suggests that the allegedly dangerous condition occurred with regularity and was therefore foreseeable.

There are a number of problems, however, with using this reasoning to establish constructive knowledge. As an initial matter, Mr. Bosworth only took close-up photos of the striped asphalt area. He conducted no other analysis, not even tactile testing with his hand. *Id.* at 46–47. It is therefore unclear how Mr. Bosworth's opinions create a genuine issue of material fact concerning whether or not the yellow striping created a dangerously slippery condition every time it rained. Indeed, Ms. Davies' unimpeached tribometer[6] results demonstrate that the

---

[6] Ms. Davies utilized an English XL Variable Incidence Tribometer. Dkt. 28-8 at 7. XL tribometers are tools that "mimic[] significant biomechanical parameters of the human walking gait" in order to "measure the slip resistance of particular walking surfaces." *Darby v. Carnival Corp.*, No. 19-21219-CIV, 2021 WL 6428039, at *9 (S.D. Fla. Nov. 23, 2021), *adopted by*, No. 19-21219-CIV, 2022 WL 112193 (S.D. Fla. Jan. 12, 2022). Furthermore, they are commonly relied on by experts in slip and fall cases all over the United States. *See Kessler v. NCL (Bahamas) Ltd.*, No. 1:19-CV-20583, 2019 WL 8128483, at *4 (S.D. Fla. Dec. 20, 2019) (allowing expert opinion based on tribometer results); *Zarfaty v. Garden Fresh Rest. Corp.*, No. 15-CV-60268, 2019 WL 8810306, at *4 (S.D. Fla. Oct. 30, 2019) (allowing expert opinion challenging tribometer results); *Michaels v. Taco Bell Corp.*, No. CIV. 10-1051-AC, 2012 WL 4507953, at *8 (D. Or. Sept. 27, 2012) (allowing expert opinion based on tribometer results); *Fullerlove v. Menard Inc.*, No. 4:15-CV-

Exhibit 16

painted and unpainted asphalt throughout the Store's entry walkway have roughly the same friction co-efficient when wet.[7] Dkt. 28-8 at 7. The only friction testing in this record therefore shows that the area of the yellow striping was not materially more slick or slippery (i.e., of lesser friction co-efficient) than the adjacent raw unpainted asphalt. This fact is uncontested in the record.

Ms. Piazza's expert, Mr. Bosworth, does not contend that the tribometer test was improperly undertaken or that it yielded false results. Rather, Mr. Bosworth argues that a tribometer cannot meaningfully test slip-resistance because there is no accepted control against which to measure a tribometer's findings for outside walkways. Dkt. 28-6 at 50, 81. This assertion is without cited authority.[8] Even if true, though, this does not call into question the fact that the tribometer results

---

4207-SLD-JEH, 2017 WL 1430605, at *2 (C.D. Ill. Apr. 20, 2017) (relying on tribometer results in granting summary judgment); *Barnes v. Malinak*, 320 F.R.D. 130, 139 (E.D. Tenn. 2017) (allowing expert opinions based on tribometer results).

[7] Ms. Piazza does challenge Ms. Davies' tribometer results in so far as Ms. Davies allegedly failed to test the exact location of Ms. Piazza's fall. Dkt. 34 at 10. But Ms. Piazza offers no evidence to suggest that the area tested, which was mere feet away, failed to be representative of the rest of the walkway. After walking around the center of the crosswalk area where she generally understood the fall to have occurred, Ms. Davies "documented representative conditions and got a feel for [the walkway]." Dkt. 34-3 at 50. Ms. Davies then picked four test locations "slightly off to the side of the crosswalk," *id.*, "in order to determine the affect of the painted striping on the asphalt drive path surface[,]" Dkt. 28-8 at 7. These locations included "an area with fully intact striping, an area that exhibited minor wear, an[] area that exhibited more significant wear, and an area of asphalt where no striping had been applied." *Id.* In so doing, Ms. Davies produced a specific "average slip resistance" value for each level of striping under both wet and dry conditions. *Id.* There is nothing in the record to support any argument that, of these eight slip resistance values, none substantially represents the slip resistance of the stripe upon which Ms. Piazza claims to have fallen. The scope of Ms. Davies' testing, moreover, inherently suggests the opposite. This is not to mention the fact that there is no evidence that conclusively demonstrates the exact location of Ms. Piazza's fall.

[8] Mr. Bosworth's assertion also fails to account for the fact that the ASTM F1646, "Standard Terminology Relating to Walkway Safety and Footwear," itself recognizes a "walkway tribometer" as an "apparatus used to measure the frictional forces acting at an interface between a walkway surface and shoe material."

Exhibit 16

(uncontested as to accuracy) returned almost the same friction co-efficient for painted and unpainted asphalt alike. Thus, although Ms. Davies' findings are challenged as to their material meaning for slipperiness generally, there is no evidence challenging the conclusion that the yellow paint had no impact on that slipperiness or that the yellow striping was not materially more slick or slippery than the adjacent raw unpainted asphalt.

In Florida, "[t]he mere fact that one slips and falls on a floor does not constitute evidence of negligence." *Feinman v. Target Corp.*, No. 11-62480-CIV, 2012 WL 6061745, at *4 (S.D. Fla. Dec. 6, 2012). Furthermore, "the right to recover in a slip and fall case requires more than a showing simply that the surface upon which the injured fell was slick, smooth or wet." *Williams v. Holland*, 205 So. 2d 682, 683 (Fla. 1st DCA 1968). Here, because Mr. Bosworth's opinions fail to create a genuine issue of fact concerning the existence of the dangerous condition that Target supposedly had constructive knowledge of, there is no notice question for a jury to consider. By consequence, there is no negligence question either. *See Schoen v. Gilbert*, 436 So. 2d 75, 76 (Fla. 1983) (finding that whether a homeowner has the duty to warn a guest of a condition is *not* a factual question beyond summary judgment determination where the condition is not inherently dangerous as a matter of law). It is a simple fact that, no matter what the yellow stripping contained or did not contain, the striping was not materially more slick than the

**Exhibit 16**

adjacent unpainted asphalt.

Mr. Bosworth's reliance on Section 5.1.3 of ATSM F1637-13 cannot rectify this fatal shortcoming. Even if the ATSM guidelines were part of the applicable regulatory codes, which Mr. Bosworth admits that they are not, Mr. Bosworth's testing fails to demonstrate whether or not the ATSM guidelines were violated. Dkt. 28-6 at 37–39. This is largely because Mr. Bosworth admits that there could be "additive[s] out there that [he] would not be able to identify [from his macroscopic photography alone]." *Id.* at 59.[9] Further, while Ms. Piazza herself claims that the subject striping was slippery (perhaps due to grease), she identifies no affirmative evidence to support her claim except Mr. Bosworth's report, which itself cannot rebut Ms. Davies' findings. It follows that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[,]" *Matsushita*, 475 U.S. at 587, on the fundamental issue of whether or not there was a recurring

---

[9] It is also because Mr. Bosworth is incapable of ruling out the existence of other preventative measures named in the standard he relies on. As mentioned above, Section 5.1.3 of ASTM F1637-19 provides that "[w]alkways shall be slip resistant under expected environmental conditions and use. Painted walkways shall contain an *abrasive additive, cross cut grooving, texturing or other appropriate means* to render the surface slip resistant where wet conditions may be reasonably foreseeable" (emphasis added). When Mr. Bosworth was asked whether he did "any particular analysis with respect to whether or not the yellow striping contained any type of texturing[,]" Mr. Bosworth responded that "[a]s far as – I mean, I observed it. I looked at it and photographed it. I didn't see – to me it looked like it was applied directly to the surface of the asphalt, but there was no special steps taken to change the surface shape, which is something you would observe with texturing." Dkt. 28-6 at 63–64. When Mr. Bosworth was asked "whether or not there were any other means to render the surface slip resistant[,]" Mr. Bosworth responded, "I wouldn't say normal. I mean, when I go to look at any other store that has their pedestrian crosswalk marked, they usually just use the aggregate in the pavement. As far as – I don't think I've ever seen on a non-top surface any polymers or something like that applied. It doesn't mean they don't exist. I just haven't seen it before." *Id.* at 64.

**Exhibit 16**

dangerous condition caused by the painted stripping.

All the same, if the alleged dangerous condition regularly occurred, the deposition testimony concerning incidents prior to and following Ms. Piazza's accident would be inexplicable. Indeed, Ms. Piazza testified that she has been shopping at the Store monthly for over six years and continues to do so. Dkt. 28-3 at 30, 43. Other than the day of her accident, she has never experienced slipperiness entering or exiting the Store. *Id.* at 31. The Store's director, Shannon Plehn, testified that, of the thousands of customers she sees daily, not a single person has ever complained about slippery yellow striping. Dkt. 26-4 at 37. And the Store's property manager, Justin Bynum, testified that he has never received a complaint or been made aware of any incident involving slippery painted stripes. Dkt. 28-5 at 25.

In considering the question of regularity-based constructive knowledge, courts in the Middle District of Florida have given significant weight to undisputed testimony concerning a lack of prior incidents. *See Johnson v. Cumberland Gulf Grp. of Cos.*, No. 6:17-CV-788-ORL-41KRS, 2018 WL 11251530, at *4 (M.D. Fla. Aug. 17, 2018) (concluding that the plaintiff failed to establish regularity regarding the allegedly dangerous condition where the plaintiff testified that "he had visited the [p]roperty about three to four times per week for the past fourteen years . . . was familiar with the layout . . . generally walked the same path . . . yet he never noticed any conditions similar to the one that caused his injury"); *Feliciano v. Target*

**Exhibit 16**

*Corp.*, No. 2:13-CV-278-FTM-38, 2014 WL 2199642, at *3 (M.D. Fla. May 27, 2014) (concluding that the plaintiff failed to establish regularity regarding the allegedly dangerous condition where the plaintiff testified that "she had never noticed any liquid spills or debris on the [s]tore's floor during one of her regular trips to the [s]tore prior to the incident"). That being so, Mr. Bosworth's opinions alone cannot indirectly create a genuine issue of material fact concerning whether the condition occurred with such regularity that it was foreseeable when Ms. Davies' unimpeached findings and the entirety of the site history in this record contradict the very existence the dangerous condition.

      Where the record as a whole could not lead a rational trier of fact to find that the defendant had actual or constructive knowledge of an allegedly defective condition, summary judgment in favor of the defendant is proper. *See Cabrera*, 2022 WL 1642762, at *3. In the instant case, a rational trier of fact could not conclude that Target had actual or constructive knowledge of the allegedly dangerous condition. The record is simply uncontested that the yellow striped asphalt was not materially slicker or more slippery than adjacent unpainted areas. Summary judgment is proper for that reason alone.

      The Court also finds that summary judgment is proper due to the fact that the condition Ms. Piazza complains of was open, obvious, and not inherently dangerous. It is well established that "some conditions are so obvious and not

**Exhibit 16**

inherently dangerous that they can be said, as a matter of law, not to constitute a dangerous condition, and will not give rise to liability due to the failure to maintain the premises in a reasonably safe condition." *Brookie*, 213 So. 3d at 1132 (citations omitted); *see also Circle K Convenience Stores, Inc. v. Ferguson*, 556 So. 2d 1207, 1208 (Fla. 5th DCA 1990) (upholding a directed verdict where the invitee stubbed her toe on the joint between asphalt and concrete in a gas station parking lot because it was an open an obvious condition that was ordinarily innocuous); *Aventura Mall Venture v. Olson*, 561 So. 2d 319, 321 (Fla. 3rd DCA 1990) (remanding with instructions to enter a directed verdict where the invitee tripped on an ordinary sidewalk curb because it was not inherently dangerous).

Ms. Piazza admits that, at the time of her accident, she knew that it had rained and that there was liquid on the ground. Dkt. 28-3 at 34. Consequently, whether or not distractions surrounded her, she was aware that she was walking on a wet or damp asphalt parking lot. And, while Ms. Piazza claims that "the yellow stripe may [have been] open and obvious . . . [but] its lack of traction [was not,]" there is no evidence to support the notion that the striped asphalt was any more slippery than the rest of the asphalt in the Store's parking lot. Dkt. 33 at 19. Indeed, as discussed above, Ms. Davies' unimpeached tribometer results show that the entire asphalt walkway contained a nearly identical friction co-efficient.

Although *Alsip v. Wal-Mart Stores East, LP*, 658 F. App'x 944, 949 (11th

**Exhibit 16**

Cir. 2016) is an Eleventh Circuit case considering a slip and fall under Alabama law, its summary judgment discussion is instructive. There, the plaintiff also slipped on a painted area in a wet parking lot. *Id.* The court found that "irrespective of whether there was aggregate in the paint, [p]laintiff fail[ed] to offer evidence from which a jury could reasonably conclude that the crosswalk lines were not slip resistant." *Id.* Because Ms. Piazza "identifies no [lay or expert] testimony or circumstantial evidence from which a jury could reasonably infer that the crosswalk lines were any more dangerous than a typical paved outdoor surface on a rainy day[,]" the same can be said here. *Id.* Mr. Bosworth did not test for slip resistance. Dkt. 28-7. He did not test the yellow striping for additives or determine what it was made of. *Id*. He did not even compare his up-close photographs of the striping with photographs of the immediately surrounding asphalt. *Id.* Rather, he took photographs of the striping, compared them to photographs of painted walkways that may or may not be made of asphalt, and concluded that there were no additives in the subject striping, rendering it not slip resistant by default. *Id.* This is a wholly inadequate method to establish the existence of a dangerous condition where Mr. Bosworth himself admits that there are additives that might not be identifiable through photography-based analysis alone and where no other evidence exists to suggest that the striping was any more dangerous than a typical asphalt walking surface. Dkt. 28-6.

**Exhibit 16**

"To hold that an ordinary [entry walkway], without more, is inherently dangerous would make every municipality and business establishment the virtual insurer of the safety of every pedestrian." *See Aventura Mall Venture,* 561 So. 2d at 321. The Court declines to do so.

## CONCLUSION

For the reasons explained above, Ms. Piazza has failed to come forward with specific facts showing that there is a genuine issue for trial. She simply cannot show that a dangerous condition existed or that, if it did, Target had actual or constructive knowledge of it. The Court therefore grants summary judgment to Target on Ms. Piazza's sole negligence claim.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant's Motion for Summary Judgment (Dkt. 28) is **GRANTED**. The Clerk is directed to enter judgment accordingly and close the case.

**DONE AND ORDERED** at Tampa, Florida, on November 14, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

Exhibit 16