```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

WILFREDO MARIBONA,

       Plaintiff,

v.                                    Case No: 2:22-cv-244-JES-NPM

WAL-MART STORES EAST, LP,

       Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on three motions: (1) plaintiff's *Daubert* Motion to Preclude Expert Testimony of Derrek-Ian Verlaan (Doc. #36) filed on September 26, 2023, and the corresponding Response in Opposition (Doc. #40) filed on October 13, 2023; (2) Defendant's Daubert Motion and Supporting Memorandum of Law to Strike the Opinion and Testimony of Plaintiff's Expert Christopher Zimmerman (Doc. #38) filed on September 26, 2023, and the corresponding Response in Opposition (Doc. #39) filed on October 10, 2023; and (3) Defendant's Motion for Final Summary Judgment (Doc. #37) filed on September 26, 2023 and the corresponding Response in Opposition (Doc. #41) and Reply (Doc. #42). The motions are resolved as set forth below.

**I.**

Plaintiff Wilfredo Maribona (Plaintiff or Maribona) filed a negligence suit against Wal-Mart Stores East, LP (Wal-Mart or

Defendant). Plaintiff summarizes his claim: "The Plaintiff alleges that he slipped due to the painted stop bar [on the parking lot] being slippery when wet as the result of rain." (Doc. #36, p. 1.) While no accident report was filled out, store surveillance recorded the event.

Plaintiff has retained Christopher Zimmerman (Zimmerman) as an expert witness. Zimmerman has opined that the paint on the stop bar did not have appropriate slip resistance, and that Wal-Mart violated several building and other codes. Wal-Mart in turn retained Derrek-Ian Verlaan (Verlaan) as its rebuttal expert. Verlaan has opined that the stop bar was not slippery. Each side seeks to preclude the other's expert from testifying.

## II.

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). The Court applies federal law to determine the admissibility of expert testimony. Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193 (11th Cir. 2010). Admission of expert opinion evidence is governed by Fed. R. Cv. P. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

>   **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>   **(b)** the testimony is based on sufficient facts or data;
>
>   **(c)** the testimony is the product of reliable principles and methods; and
>
>   **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (eff. Dec. 1, 2023). In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) and Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), the Supreme Court held that the trial court has a "gatekeeper" function designed to ensure that any and all expert testimony is both relevant and reliable. The importance of this gatekeeping function "cannot be overstated." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. Frazier, 387 F.3d at 1260. "Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact." Club Car, Inc. v. Club Car (Quebec) Imp., Inc., 362 F.3d 775, 780 (11th Cir. 2004), abrogated on other grounds by Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1258 n.7 (11th Cir. 2010). In

short, "the expert must be qualified; his methodology must be reliable; and his testimony must be helpful to the trier of fact." Doe v. Rollins Coll., 77 F.4th 1340, 1347 (11th Cir. 2023). "The proponent of the expert testimony bears the burden of establishing each requirement by a preponderance of the evidence...." Id. "Even expert testimony which satisfies these three requirements, however, may nonetheless be excluded under Rule 403 if the probative value of the expert testimony is substantially outweighed by its potential to confuse or mislead the jury, or if it is cumulative or needlessly time consuming." Frazier at 1263. The admission of expert testimony is a matter within the discretion of the trial court. Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1103 (11th Cir. 2005); Frazier, 387 F.3d at 1258.

### III.

**A. Christopher Zimmerman**

Plaintiff's expert Christopher Zimmerman is a Florida State Licensed Building Inspector and a Florida State Licensed Plans Examiner with over 16 years of experience examining the permitting and construction process, including construction safety practices. Zimmerman has been court-qualified to provide such testimony. (Doc. #38-1, pp. 6-13.)

Zimmerman conducted an on-site inspection on July 7, 2021, (approximately six months after the event) while the weather was

overcast and after it had rained. He did not do any destructive testing, but evaluated the surface the way a building inspector would - by a visual inspection, feel and touch, and scratching the surface. ((Doc. #37-10, pp. 32-33.) Zimmerman described his methodology as follows:

> A· I get down there and I sort of look at the conditions, feel the conditions, get down, touch it with your hands, feel it, scratch across it, identifying any type of an abrasive additive.
>
> Visual, you can look down and see. ·And as we talked previously on the other photographs, that there was variations in those surface.
>
> Meaning along the painted line, there was areas where -- there was areas that were smooth versus areas that had sort of the pitting that was – appeared to be from the air, done when they sprayed it, as you can see in the photographs.
>
> And there's multiple photographs taken around to identify the various conditions along that area, as well as some of the cracking that was there.

(Id. at 65-66.)

Zimmerman opined that there was no abrasive additive in the relevant paint striping, which therefore failed to provide slip-resistant construction. (Id. at 51.) Zimmerman's "first opinion" identified the route as a primary access and egress route, marked as a pedestrian route, and identified various codes and criteria. The "second opinion" was that Wal-Mart failed to provide a uniformly slip-resistant walking surface for plaintiff's use under

the expected conditions and use. (Id. at 66-67.) Zimmerman issued a written opinion dated April 27, 2023, stating:

> A natural asphalt surface will typically provide a good slip resistant surface. When their surface characteristic are coated over and filled-in with a paint, it will reduce the slip resistant characteristics, unless an adequate surface texturing or an abrasive additive is provided. The stop bar marking contained multiple coats of paint that coated over the natural abrasive characteristics in the asphalt. During my examination, there was no evidence of an abrasive additive present within the painted marking. The surface presented a smooth, nonporous surface. Such hard, smooth surfaces, without adequate abrasive additives, are a known condition that will present a slip hazard when wet or contaminated.

(Doc. #38-1, p. 4.)

### B. Derrek-Ian Verlaan

Defendant's expert Derrek-Ian Verlaan (Verlaan) is a Certified Safety Professional and a Senior Staff Consultant with Engineering Systems Inc. in Fort Myers, Florida who has "been performing scientific investigation, research, and consulting for over 20 years." (Doc. #37-13.) Verlaan also does property loss consulting for insurance, fire investigation, and environmental consulting. (Doc. #36, p. 12.) Verlaan has never testified in court or had his testimony disqualified. (Id. at 14.) Although it varies year to year, Verlaan works for both plaintiffs and defendants in slip or trip and falls. (Id. at 16-17.)

By the time Verlaan was engaged, the pavement markings at the Wal-Mart store had been repainted, so Verlaan did not inspect the scene of the accident. Instead, Verlaan relied upon his examination of the video of the event, still photographs taken by Zimmerman, and company slip and fall information for the location going back six months. His review of this information showed that plaintiff was the only one to slip in the parking lot out of 336 people traversing the pavement markings, including the stop bar. (Id.) Verlaan looked at the video for partial slips or slip recoveries with the 118 people of the 336 people who physically stepped on the stop bar for a statistical analysis to determine how many steps people take across the painted steps. (Id. at 36.) The physical analysis was tied back to published research which shows that at certain levels of coefficient of friction the risk of slipping decreases. (Id. at 37.) But Verlaan did not do a slip coefficient test because the surface had changed. (Id. at 31.)

Verlaan did a gait analysis of the video footage showing plaintiff did a partial split while holding the shopping cart. (Doc. #37-15, p. 8.) Verlaan opined that discovery materials in the case showed reflective cracks through the paint that could "displace or disperse accumulation of surface water on the painted surface of the pavement markings and reduc[e] the potential for slips due to hydroplaning." (Id. at 9.) Additionally, Verlaan

found the stop bar was not slippery because no other slip and falls were reported or viewed within the prior six months. Verlaan stated: "The video analysis and estimated incident rate supports that the walking surface was slip resistant and Mr. Maribona's slip was an atypical random event." (Id. at 14.)

### C. Challenges to Experts

As stated earlier, "the expert must be qualified; his methodology must be reliable; and his testimony must be helpful to the trier of fact." Rollins Coll., 77 F.4th at 1347. Essentially, both sides argue that the other's expert fails to satisfy any of these requirements.

The Court finds that both Zimmerman and Verlaan are qualified by virtue of their education, training and experience. The respective arguments to the contrary are rejected.

The Court also finds that Plaintiff has established that Zimmerman's methodology is reliable and his testimony on the first opinion would be helpful to the trier of fact.[1] The asserted shortcomings go to the weight of the testimony and the admissibility of the drawn conclusion or second opinion, which can be raised at trial. On the other hand, the Court finds that

---

[1] Unlike Alsip v. Wal-Mart Stores E., LP, 658 F. App'x 944, 948 (11th Cir. 2016), Zimmerman visited the scene and examined the stop bar, and Wal-Mart has introduced no evidence of testing it has conducted.

Defendant has not established that Verlaan's methodology was reliable or that his testimony would be helpful to the trier of fact.  Verlaan conducted no site examination of any kind, and essentially counted the number of people who did not slip over an arbitrary two-hour period to draw speculative conclusions from those numbers.  While the numbers of people who did not slip at or near the pertinent time is relevant, it is not based on his expert testimony.

## VI.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).  In ruling on a motion for summary judgment, the Court views all evidence and draws

all reasonable inferences in favor of the non-moving party. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Tana v. Dantanna's</u>, 611 F.3d 767, 772 (11th Cir. 2010).

"Under Florida law, a plaintiff must establish four elements to sustain a negligence claim: (1) the defendant owed a 'duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks'; (2) the defendant failed to conform to that duty; (3) there is '[a] reasonably close causal connection between the [nonconforming] conduct and the resulting injury' to the claimant; and (4) some actual harm." <u>Sutton v. Wal-Mart Stores E., LP</u>, 64 F.4th 1166, 1169 (11th Cir. 2023) (internal quotation marks omitted). The record shows that there are genuine disputes as to material facts and does not show that Defendant is entitled to judgment as a matter of law. Therefore, summary judgment is denied.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Daubert Motion to Preclude Expert Testimony of Derrek-Ian Verlaan (Doc. #36) is **GRANTED.**

2. Defendant's Daubert Motion and Supporting Memorandum of Law to Strike the Opinion and Testimony of Plaintiff's Expert Christopher Zimmerman (Doc. #38) is **DENIED.**

    3. Defendant's Motion for Final Summary Judgment (Doc. #37) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this __3rd__ day of January 2024.

                                                        JOHN E. STEELE
                                                        SENIOR UNITED STATES DISTRICT JUDGE

Copies:   Counsel of Record